UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------X
```

In re:                                          :
                                                :
JOSHUA SIMON MARGULIES,                         :
                                                :
                            Debtor.             :
                                                :
```
-------------------------------------------------X
```
JOSHUA SIMON MARGUILIES,                         :
                                                :
                            Appellant,          :        16 Civ. 2643 (KPF)
                                                :
              v.                                :        Bankr. No. 10-14012 (SMB)
                                                :
DENNIS HOUGH and USAA CASUALTY                  :        OPINION AND ORDER
INSURANCE COMPANY,                              :
                                                :
                            Appellees.          :
                                                :
```
-------------------------------------------------X
```
DENNIS HOUGH,                                   :
                                                :
                            Cross-              :
                            Appellant,          :
                                                :
              v.                                :
                                                :
JOSHUA SIMON MARGULIES and USAA                 :
CASUALTY INSURANCE COMPANY,                     :
                                                :
                            Cross-              :
                            Appellees.          :
                                                :
```
-------------------------------------------------X
```

KATHERINE POLK FAILLA, District Judge:

      For the second time, Appellant/Cross-Appellee Joshua Simon Margulies

("Margulies") comes before this Court to appeal from a judgment of the United

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _March 20, 2017_

States Bankruptcy Court for the Southern District of New York (Bernstein, *J.*), and, more particularly, its finding that his debt to Appellee/Cross-Appellant Dennis Hough ("Hough") was not dischargeable pursuant to 11 U.S.C. § 523(a)(6) because it arose from Margulies's willful and malicious conduct. Hough cross-appeals from the Bankruptcy Court's determination that USAA Casualty Insurance Company ("USAA") was not liable for the judgment pursuant to New York Insurance Law § 3420, because Margulies's injurious conduct did not qualify as an "accident" under New York law.  For the reasons set forth below, the judgment of the Bankruptcy Court is affirmed and both appeals are denied.

## BACKGROUND[1]

The Court assumes familiarity with the complex and lengthy history of this litigation, which has been set forth in (i) the Bankruptcy Court's previous decisions in *Hough* v. *Margulies (In re Margulies)*, 476 B.R. 393 (Bankr. S.D.N.Y. 2012) ("*Margulies I*"); *Hough* v. *Margulies (In re Margulies)*, Adv. No. 10-04050, 2012 WL 3782535 (Bankr. S.D.N.Y. Aug. 31, 2012) ("*Margulies II*"); *Hough* v. *Margulies (In re Margulies)*, Adv. No. 10-04050, 2013 WL 2149610 (Bankr. S.D.N.Y. May 16, 2013) ("*Margulies III*"); and *Hough* v. *Margulies (In re Margulies)* ("*Margulies V*"), 541 B.R. 156 (Bankr. S.D.N.Y. 2015); (ii) this Court's previous decision, *In re Margulies* ("*Margulies IV*"), 517 B.R. 441 (S.D.N.Y.

---

[1]     The facts in this Opinion are taken from the record on appeal as designated by the parties.  (Dkt. #4-6).  For convenience, the parties' memoranda of law will be referenced as follows: Margulies's appellate brief as "Margulies Br." (Dkt. #14); Hough's cross-appellate brief as "Hough Br." (Dkt. #17); USAA's opposition brief as "USAA Opp." (Dkt. #22); and Hough's and Margulies's reply briefs as "Hough Reply" (Dkt. #23) and "Margulies Reply" (Dkt. #25), respectively.

2014); and (iii) the filings contained in the dockets for *In re Margulies*, No. 10-14012 (SMB) (Bankr. S.D.N.Y.); *Hough* v. *Margulies*, Adv. No. 10-04050 (SMB) (Bankr. S.D.N.Y.); and *In re Margulies*, No. 13 Civ. 6009 (KPF) (S.D.N.Y.). Therefore, the Court will focus here on the procedural developments that followed this Court's September 9, 2014 Opinion and Order (the "2014 Opinion") and the facts found by the Bankruptcy Court on remand.

## A.    The 2014 Opinion

The Bankruptcy Court entered its first final judgment in the adversary proceeding on May 29, 2013. (No. 10-04050, Dkt. #118). On June 11, 2013, Margulies filed a notice of appeal from the May 29, 2013 judgment, and Hough's cross-appeal followed on June 13, 2013. (No. 10-04050, Dkt. #121). The parties' respective notices of appeal were docketed by this Court on August 27, 2013. (No. 13 Civ. 6009, Dkt. #1, 2).

After considering at length the Bankruptcy Court's factual findings and legal analysis, this Court determined that further factual findings and the application of a different legal framework were required. *See generally Margulies IV.* The Court remanded to this end. *Id.* at 462. Specifically, the Court directed the Bankruptcy Court to determine on remand:

- With regard to Margulies's dischargeability claim, "(i) whether Margulies was substantially certain that Hough's injuries would occur, and if he was not, (ii) whether that finding impacts the Bankruptcy Court's determination that Margulies's actions were malicious; as well as (iii) whether Margulies's actions were undertaken for the purpose of economic benefit." *Id.*
- With regard to Hough's § 3420 claim, "(i) whether Margulies's intent and knowledge establish that

Hough's injuries were the sort that would flow 'directly and immediately' from Margulies's actions; and (ii) whether the [underlying incident (the 'Incident')] was accidental, that is, 'unusual, unforeseen, or unexpected' from Margulies's perspective." *Id.*

## B.   The Proceedings on Remand and the November 16, 2015 Judgment

### 1.   The Bankruptcy Court Proceedings

On December 22, 2014, USAA advised United States Bankruptcy Judge Stuart M. Bernstein that the Court had vacated the May 29, 2013 judgment and remanded the case for further proceedings consistent with the Court's decision.  (No. 10-04050, Dkt. #145).  USAA offered its belief that "[b]ased on the substantial evidence adduced at the [Bankruptcy Court's one-day bench trial on December 19, 2012], ... the record [was] sufficient to allow the [Bankruptcy] Court to issue additional post-trial findings of fact which answer the questions posed" in this Court's Opinion.  (*Id.*).[2]  Margulies concurred, writing separately to express his agreement that the parties need not submit new proposed findings of fact given the sufficiency of the already-existing record.  (No. 10-04050, Dkt. #147).

Judge Bernstein directed the parties to appear at a conference on February 3, 2015.  (*See* No. 10-04050, Dkt. #148).  At the conference, Hough took a different position from Margulies and USAA, agreeing that additional testimony was not required but arguing that he should be permitted to supplement the record to support his *res judicata* argument.  (No. 10-04050,

---

[2]     This letter discussed a trial date of December 19, 2012, but this is a typographical error.  The docket indicates that the correct trial date was December 14, 2012.  (No. 10-04050, Dkt. #74; *see also Margulies IV*, 517 B.R. at 445 n.1)

Dkt. #148). Judge Bernstein decided that the parties should submit proposed findings of fact and conclusions of law, and set a schedule for same. (*Id.*).

Hough filed his proposed findings of fact and conclusions of law on March 23, 2015 (No. 10-04050, Dkt. #150-51), to which he appended three exhibits to supplement the record (No. 10-04050, Dkt. #149). USAA objected to the length of Hough's filings, and argued that the Bankruptcy Court should strike the supplemental exhibits that, it contended, Hough had filed impermissibly. (No. 10-04050, Dkt. #152). The Bankruptcy Court convened a second conference on April 7, 2015. (No. 10-04050, Dkt. #154).

At the conference, Hough made two arguments. First, Hough argued that he needed to submit these additional exhibits so that the Bankruptcy Court could reconsider Hough's *res judicata* claim. (No. 10-04050, Dkt. #154). Though the Bankruptcy Court believed this Court had precluded its reconsideration of that question on remand, it did not strike Hough's exhibits and reserved decision on the propriety of his renewed *res judicata* claim. (*Id.*).

Second, Hough moved for extensions of time and page length with regard to his proposed findings of fact and conclusions of law. (No. 10-04050, Dkt. #154). Hough claimed that he could not make his case within the confines previously set. (*Id.*). Judge Bernstein retorted that Hough's difficulty derived from his decision to plead his claim in the alternative: "That's because that's the way you cast your pleading and when you address one, you shoot yourself in the foot on the other. ... And maybe you ought to make a choice." (*Id.*). Hough responded that he was unable to do so — to dismiss his claim

against Margulies and proceed against USAA alone — because of USAA's contention that the underlying incident was intentional, not accidental.  (*Id.*). Hough reasoned that if the Court found for USAA on that claim, "then that would also require under these facts a finding that there was malice," such that Margulies's debt would be "not dischargeable."  (*Id.*).

The Bankruptcy Court scheduled a second round of briefing with revised page limits.  (No. 10-04050, Dkt. #158).  Hough filed his proposed findings of facts and conclusions of law on April 28, 2015 (No. 10-04050, Dkt. #156-57); USAA filed its proposed findings of fact and memorandum of law on May 29, 2015 (No. 10-04050, Dkt. #160); and Margulies filed his brief on remand on May 30, 2015 (No. 10-04050, Dkt. #161-62).

### 2.    The November 16, 2015 Decision

Judge Bernstein issued his Post-Remand Memorandum Decision Regarding the Dischargeability of Debt Under 11 U.S.C. § 523(a)(6) and Indemnification Under New York Insurance Law § 3420 on November 16, 2015. *Margulies V*, 541 B.R. 156.  In sum, the Bankruptcy Court found that (i) "Margulies acted willfully and maliciously, and accordingly, [that] his debt to Hough is not dischargeable" and (ii) "the incident that gave rise to Hough's injury was not an accident within the meaning of New York's insurance law, and hence, is not covered by the USAA policies issued to Margulies."  *Id.* at 159.

### a.   Factual Background

Regarding the circumstances of the Incident, the Bankruptcy Court found these facts:

> On August 3, 2000, Margulies was driving north on Manhattan's Sixth Avenue, a one-way northbound road with six lanes, five of which were open to traffic. Kristopher Zdyb was a passenger in the car. They were headed to an important business meeting with former New York Governor Mario Cuomo, and they were running late. At the time, Hough was working as a flagman tasked with stopping traffic on Sixth Avenue to allow vehicles to enter and exit a construction site midway between 22nd and 23rd Streets.
>
> Margulies was stopped by Hough in the middle lane of Sixth Avenue, his car the first one in line. While stopped, one or two trucks exited the construction site, but Hough continued to hold traffic even after it appeared that no more trucks were entering or exiting the site. Margulies and Zdyb became increasingly impatient as they watched the traffic light at 23rd Street pass through two full cycles without seeing any trucks enter or leave the site.
>
> Margulies made eye contact with Hough and communicated his intention to move forward when the light turned green by tapping or pointing to his watch and revving his engine. He testified that he intended to convey that he planned to move forward regardless of whether Hough wanted him to stay put. When the light turned green, Margulies took his foot off the brakes and his car rolled slowly at a speed of one to two miles per hour, or roughly 1.5 to 3 feet per second. When the car started rolling forward Hough was not in Margulies's lane, but Hough backed into his lane when the car was about a car-length away from Hough.
>
> Margulies tried to veer to the left and drive around Hough but traffic in that lane prevented him from doing so. Margulies continued to move forward expecting Hough to get out of his way but Hough held his ground, in Margulies's view, "simply to annoy" him. Margulies continued to roll forward toward Hough, and did not

apply his brakes until *after* he hit Hough.  Seeing Hough fall, get up and thinking he was unharmed, Margulies continued up Sixth Avenue to his meeting.

Margulies subsequently pled guilty to misdemeanor assault in the third degree under N.Y. PENAL LAW § 120.00(2) (McKinney 2015). A person is guilty of misdemeanor assault in the third degree when he "recklessly causes physical injury to another person." N.Y. Penal Law § 120.00(2).   Under N.Y. PENAL LAW § 15.05(3), "[a] person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."

Prior to the commencement of this bankruptcy case, Hough sued Margulies for negligence. USAA failed to defend the action and Hough obtained a $4.8 million default judgment (the "Judgment") against Margulies. Hough subsequently brought a direct action against USAA to collect the Judgment pursuant to N.Y. INS. LAW § 3420 (McKinney 2015).

After Margulies filed his chapter 7 bankruptcy petition, Hough initiated this adversary proceeding contending that [i] the Judgment was not dischargeable under 11 U.S.C. § 523(a)(6) because Margulies had acted willfully and maliciously (the "Dischargeability Claim"), or alternatively, [ii] USAA was liable for the Judgment up to the limits of the insurance policies pursuant to N.Y. INS. LAW § 3420 because the incident was an "accident" (the "§ 3420 Claim").

*Margulies V*, 541 B.R. at 159-61.[3]  The Bankruptcy Court then proceeded for a second time to analyze these facts under the law, in keeping with this Court's instructions on remand.

### b.    The Dischargeability Claim

With regard to Margulies's dischargeability claim, the Bankruptcy Court began with its "willfulness" element.  It found that Hough had "satisfied his burden of proving that Margulies was substantially certain that his actions would result in injury to Hough."  *Margulies V*, 541 B.R. at 162.  Citing to § 8A, comment *b* of the RESTATEMENT (SECOND) OF TORTS (1964) (the "Restatement") — the section cited favorably in *Kawaauhau* v. *Geiger*, 523 U.S. 57 (1998), and commended to the Bankruptcy Court's consideration by this Court, *see Margulies IV*, 517 B.R. at 452 — the Bankruptcy Court applied the Restatement comment's "sliding scale of *scienter*" to the instant case.  *Margulies V*, 541 B.R. at 162.  The Court described how "Margulies passed through each successive state of consciousness … in reverse order culminating in his substantial certainty that he would injure Hough."  *Id.*  The last stage was the critical one, at which "Margulies understood that Hough had no means of escape."  *Id.* at 163.

The Bankruptcy Court found that at that final moment, when "Margulies knew that Hough could not get out of the way, but … continued to roll forward anyway," Margulies crossed the threshold from recklessness to intent:

---

[3]    Hough and USAA consented to the Bankruptcy Court's ability to enter final judgment on the § 3420 Claim, so both claims proceeded before the Bankruptcy Court, resulting in the Final Judgment that was appealed to and vacated by this Court in 2014.  (*See* No. 10-04050, Dkt. #63, 112).

> This was not a situation where Hough suddenly stepped
> in front of Margulies's car and Margulies was moving
> too fast to react.  Instead, he reached the point where
> he was substantially certain that he would hit Hough
> and injure him, but did not apply his brakes until *after*
> he struck Hough and knocked him down.  When he saw
> him get up apparently without injury, he drove away.
> Although Margulies hoped Hough would give ground, he
> understood the consequences of his conduct.

*Margulies V*, 541 B.R. at 163.  The Bankruptcy Court allowed that for the
majority of the interaction, "Margulies didn't intend to injure Hough, and was
'very certain' he would move out of the way."  *Id.*  But it likewise found that
"there came a point when [Margulies's] lack of an intent to injure Hough gave
way to a substantial certainty that he would.  [Margulies] continued to roll
forward even after Hough could no longer escape and did not apply the brakes
until after he hit Hough."  *Id.*  "Accordingly," the Bankruptcy Court concluded,
Margulies "willfully injured Hough."  *Id.*

Considering next whether Margulies acted maliciously, the Bankruptcy
Court found that he did.  First, the Bankruptcy Court explained that the
interrelatedness of willfulness and maliciousness led him to believe that absent
special circumstances, "one who intentionally causes injury to another, or acts
with substantial certainty that physical injury will occur, acts without just
cause or excuse" and therefore maliciously.  *Margulies V*, 541 B.R. at 164.
Second, the Bankruptcy Court reasoned that even if Margulies "may have
lacked hatred or ill-will and did not intend to harm Hough, malice may be
implied because he acted 'contrary to commonly accepted duties in the

ordinary relationships among people.'  It is unacceptable to drive a car at a pedestrian to clear him from your intended path."  *Id.*

Third, the Bankruptcy Court found Margulies to have admitted as much in "his guilty plea that he acted 'recklessly' within the meaning of N.Y. PENAL LAW § 15.05."  *Margulies V*, 541 B.R. at 164.  In so pleading, Margulies "admitted that he was 'aware of and consciously disregard[ed] a substantial and unjustifiable risk' that his conduct would injure Hough, and that the risk was 'of such nature and degree that disregard thereof constitute[d] a gross deviation from the standard of conduct that a reasonable person would observe in the situation.'"  *Id.* at 164-65.  The Bankruptcy Court noted that recklessness alone does not establish malice *per se*, but found all the same that

> Margulies's admission that he was aware of the risk to Hough and that his conduct grossly deviated from the standard of conduct of a reasonable person describes conduct consistent with implied malice.  When considered in light of the totality of the circumstances — rolling forward toward Hough without intending to apply the brakes, even when Hough could no longer escape — [the admission] supports the finding that he acted with implied malice.

*Id.* at 165.

The Bankruptcy Court rejected Margulies's argument that his actions were not malicious because they were motivated by a desire to reap an economic benefit.  It acknowledged "that an economic justification may negate malice where the underlying claim involves an economic tort because in such circumstances no tort has actually been committed."  *Margulies V*, 541 B.R. at

165 (citing RESTATEMENT (SECOND) OF TORTS (1964) § 890 cmt. *a* ("The privilege

that one has to compete in business at the expense of competitors comes

within this category of conduct that creates an undue risk to a third party but

is not actionable unless the conduct is unreasonable." (internal citation

omitted)).

Finally, the Bankruptcy Court considered the cases cited by this Court,

but found them inapplicable to the instant case.  *Margulies V*, 541 B.R. at 165-

66.  Rather, the Court concluded that "*[w]hatever* role economic justification

may play as a defense to a § 523(a)(6) claim based on a commercial tort, it does

not excuse Margulies's assault or prohibit a finding of implied malice.  There is

*no* economic benefit that would justify driving into Hough in order to get to an

important business meeting."  *Id.* at 166 (emphases added).  Therefore, the

Court concluded, "Margulies acted willfully and maliciously within the meaning

of 11 U.S.C. § 523(a)(6)."  *Id.*

### c.     The Section 3420 Claim

With regard to Hough's § 3420 claim, the Bankruptcy Court recounted

the scope of Margulies's insurance policy:  he "was a named insured under an

automobile liability policy and personal umbrella policy with limits of $300,000

and $1,000,000, respectively (collectively, the 'Policies')."  *Margulies V*, 541 B.R.

at 166-67.  The Policies covered Margulies for "occurrences," defined to include

"accidents," unless coverage was otherwise barred by any of the Policies'

exceptions.  *Id.*  Were this a typical indemnification action, the Court explained,

it would be Hough's burden to demonstrate that there was coverage, and then

USAA's burden to refute coverage by demonstrating the applicability of a policy exception. *Id.* at 167. "However, because USAA breached its duty to defend in state court, it [could] not rely on the Policies' exclusions. Accordingly, the sole issue on remand [was] whether the Policies provided coverage by reason of inclusion, not exclusion." *Id.* at 167. And it was thus Hough's burden to show that the Incident was (i) an accident and (ii) fortuitous. *Id.* at 166-67.[4]

The Bankruptcy Court took note of the hypothetical offered by this Court to elucidate the interplay between the laws regarding dischargeability and indemnity, but concluded that it was inapposite to the instant case: "Where ... a debtor has acted both willfully *and* maliciously, it is likely that the plaintiff's injuries did not result from an 'accident.'" *Margulies V*, 541 B.R. at 167. In this case, the Bankruptcy Court "found that Margulies continued to roll forward at a slow speed even after he was substantially certain that Hough could no longer get out of the way and would be struck, but did not apply his brakes until after he hit Hough." *Id.* at 168. Under such circumstances, the Bankruptcy Court reasoned, "hitting and injuring Hough was not unforeseen or unexpected from Margulies's point of view, and was not an 'accident.'" *Id.*

Moreover, the Bankruptcy Court continued, "Margulies's conduct must be deemed intentional *regardless* of Margulies's subjective intent to harm." *Margulies V*, 541 B.R. at 168 (emphasis added). The Bankruptcy Court

---

[4]    All parties and both courts agree that for purposes of the indemnity claim, "Hough stands in Margulies's shoes and has 'no greater rights than the insured.'" *Margulies V*, 541 B.R. at 166 (quoting *D'Arata* v. *N.Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 665 (1990)).

analogized the instant case to *Progressive Northern Insurance Company* v.

*Rafferty*, 793 N.Y.S.2d 618 (3d Dep't 2005), and affirmed *Rafferty*'s

applicability despite this Court's previous skepticism on that score.  *Margulies*

*V*, 541 B.R. at 168-69.  The Bankruptcy Court allowed that "*Rafferty* and the

instant case are dissimilar in some respects," but insisted "they are sufficiently

similar to support the application of the 'inherently intentional' doctrine to

Margulies's conduct."  *Id.* at 169.  The Court compared the dispositive fact in

*Rafferty* — "the act of placing the car in motion where two feet of space

separated the car and an immovable object with [the victim] standing in

between" — with what it considered to be the dispositive fact in the instant

case — Margulies's decision to drive a car at Hough even once he was "so close"

that "Hough lacked a means of escape."  *Id.*  "In both situations," the

Bankruptcy Court concluded, "the driver intentionally drove his car ahead

knowing that there was a person in close proximity who would be hit if he did

not stop the car."  *Id.*

The Bankruptcy Court also found that the incident was not "fortuitous"

for two reasons:

> First, Hough's injury flowed directly and immediately
> from Margulies's actions.   Margulies was intent on
> proceeding, and did so even after Hough backed into the
> path of the car.   Second, the incident was not 'to a
> substantial extent beyond the control of either party.'
> Margulies was in total control of his car.  All he had to
> do was keep his foot on the brakes, as he had done
> through two cycles of the 23rd Street traffic light, until
> Hough stepped away, or if he didn't, until Hough
> instructed him to proceed.

*Margulies V*, 541 B.R. at 169.  The Bankruptcy Court therefore held that

"Hough failed to sustain his burden of proving that the incident was an 'accident' within the meaning of the Policies, and hence, a covered loss." *Id.*

### d.   Res Judicata

Despite arguments that such an inquiry exceeded the scope of the remand, the Bankruptcy Court also considered Hough's claim that USAA was barred from contesting coverage by principles of *res judicata*. The Bankruptcy Court stated as a preliminary matter its understanding that "the District Court ha[d] already rejected Hough's *res judicata* argument on the merits," such that "determination of the issue [was] outside of the District Court's mandate." *Margulies V*, 541 B.R. at 170. "[I]f Hough believed that the District Court had made a mistake, he should have raised it with the District Court through a motion for reargument." *Id.* at 171. Moreover, the Bankruptcy Court "reject[ed] the contention that [this Court's] ruling on the merits was *dicta* or advisory," because this Court had "rejected Hough's *res judicata* argument on three separate, alternative grounds: it lacked subject matter jurisdiction because Hough had failed to raise the argument below, the refusal to consider the argument on appeal did not result in manifest injustice[,] and the argument lacked merit." *Id.*

Considering the merits *arguendo*, however, the Bankruptcy Court also rejected Hough's *res judicata* claim. Adopting this Court's analysis of the issue, the Bankruptcy Court rejected Hough's claim because Hough did not satisfy *res judicata*'s third requirement: "Hough sued Margulies on a negligence theory. Even if USAA had assumed the defense of the underlying negligence

action, it could not have defended Margulies's negligent conduct by arguing that he actually intended to injure Hough." *Margulies V*, 541 B.R. at 172.

The above analysis led the Bankruptcy Court to a clear conclusion: Hough was entitled to judgment that Margulies's debt was not dischargeable, and USAA was entitled to judgment that Hough's claim for indemnification under the Policies failed. *Margulies V*, 541 B.R. at 172.

### 3.   Subsequent Proceedings

The Final Judgment of the Bankruptcy Court was entered on November 24, 2015. (No. 10-04050, Dkt. #166-68). Margulies filed a notice of appeal on December 7, 2015 (No. 10-04050, Dkt. #169), and Hough a cross notice of appeal on December 8, 2015 (No. 10-04050, Dkt. #170). The parties then quarreled for months regarding the designations of items to be included in the record on appeal. (No. 10-04050, Dkt. #171-79). The complete record was not designated and transmitted to the United States District Court for the Southern District of New York until April 27, 2016. (No. 10-04050, Dkt. #180).

### 4.   The Instant Litigation

Notices of Margulies's appeal and Hough's cross-appeal were docketed in the United States District Court for the Southern District of New York on April 8, 2016. (No. 16 Civ. 2643, Dkt. #1, 3). Originally assigned to United States District Judge Laura Taylor Swain, the appeal was reassigned to the undersigned on May 10, 2016. (No. 16 Civ. 2643, Dkt. Entries dated May 10, 2016). Margulies filed his Appellant's Brief on June 10, 2016 (No. 16 Civ. 2643, Dkt. #14), which the Court accepted as timely given Margulies's

16

difficulties with the Court's electronic filing system (No. 16 Civ. 2643, Dkt. #16).  Hough filed his Cross-Appellant's Brief on July 8, 2016 (No. 16 Civ. 2643, Dkt. #17), and USAA filed its Appellee's Brief on August 17, 2016 (No. 16 Civ. 2643, Dkt. #22).  Margulies filed his Appellant's Reply Brief on September 9, 2016 (No. 16 Civ. 2643, Dkt. #25), and Hough filed his Cross-Appellant's Reply Brief the same day (No. 16 Civ. 2643, Dkt. #23).

USAA submitted a letter to the Court on September 19, 2016, alleging two improprieties in Hough's Reply Brief.  (No. 16 Civ. 2643, Dkt. #27).  The letter contended that (i) Hough sought to introduce improper extra-record evidence under the guise of a request that the Court take judicial notice of certain facts and (ii) Hough misattributed his own trial testimony to Margulies. (*Id.*).  Hough moved to strike the letter as an unauthorized sur-reply, which motion the Court denied while affording Hough an opportunity to respond to its allegations.  (No. 16 Civ. 2643, Dkt. #28-29).  Hough filed a responsive letter on September 28, 2016, reiterating his arguments for judicial notice and apologizing for the misattribution, which he explained was inadvertent.  (No. 16 Civ. 2643, Dkt. #30).

## DISCUSSION

### A.    The Standard of Review

Under 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts.  A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re*

*Bernard L. Madoff Inv. Sec., LLC*, No. 15 Civ. 1151 (PAE), 2016 WL 183492, at
*8 (S.D.N.Y. Jan. 14, 2016).[5]  In general, a district court reviews a "Bankruptcy
Court's findings of fact for clear error [and] its conclusions of law *de novo*."  *In
re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000) (internal
citations omitted); *see also In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482-83
(2d Cir. 2012) ("Generally in bankruptcy appeals, the district court reviews the
bankruptcy court's factual findings for clear error and its conclusions of law de
novo." (citing former Fed. R. Bankr. P. 8013)); *In re Sabine Oil & Gas Corp.*,
No. 16 Civ. 6054 (LAP), 2017 WL 477780, at *3 (S.D.N.Y. Feb. 3, 2017) (citing
*Overbaugh* v. *Household Bank, N.A. (In re Overbaugh)*, 559 F.3d 125, 129 (2d
Cir. 2009)).

"[F]indings of fact, whether based on oral or documentary evidence, shall
not be set aside unless clearly erroneous," *In re Artha Mgmt., Inc.*, 91 F.3d 326,
328 (2d Cir. 1996) (citing former Fed. R. Bankr. P. 8013), and "due regard shall
be given to the opportunity of the bankruptcy court to judge the credibility of
the witnesses," *In re Great Atl. & Pac. Tea Co., Inc.*, No. 14 Civ. 4170 (NSR),
2015 WL 6395967, at *2 (S.D.N.Y. Oct. 21, 2015) (quoting *Margulies IV*, 517

---

[5]     These powers are the same as those exercised by this Court in *Margulies IV*.  However,
because of an intervening change in the law, they now flow from a new source.  As
courts in this Circuit have recognized, the Federal Rules of Bankruptcy Procedure were
amended, effective December 1, 2014, by order of the Supreme Court.  *See Bosman* v.
*Glod*, No. 6:15-CV-1036 (GLS), 2017 WL 822105, at *3 n.4 (N.D.N.Y. Mar. 2, 2017)
(citing Order Amending Fed. R. Bankr. P. (Apr. 25, 2014),
http://www.supremecourt.gov/orders/courtorders/frbk14_d28l.pdf.)); *In re Great Atl. &
Pac. Tea Co., Inc.*, No. 14 Civ. 4170 (NSR), 2015 WL 6395967, at *2 n.1 (S.D.N.Y.
Oct. 21, 2015) (same).  Rule 8013, which previously governed this Court's appellate
powers, was removed and replaced with a modified version of what had been Rule 8011.
*In re Great Atl. & Pac. Tea Co., Inc.*, at *2 n.1.  However, this Court agrees with others
considering this change that abundant case law and "logic still compel[] the same
conclusion with respect to the appellate powers of the District Court."  *Id.*

B.R. at 451 (citing *In re Lafayette Hotel P'ship*, 227 B.R. 445, 448 (S.D.N.Y.
1998))).  *See also In re Tribeca Mkt., LLC*, 516 B.R. 254, 269 (S.D.N.Y. 2014).  "A
finding is 'clearly erroneous' when the reviewing court is 'left with the definite
and firm conviction that a mistake has been made.'  *In re Tribeca Mkt., LLC*,
516 B.R. at 269 (quoting *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d
Cir. 2009) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395
(1948))).

**B.    Analysis**

**1.    The Bankruptcy Court's Judgment That Margulies's Debt Is
Not Dischargeable Is Affirmed**

**a.    Applicable Law Regarding Willfulness**

Under the Bankruptcy Code, a debt may not be discharged where it was
incurred because of a "willful and malicious injury by the debtor to another."
11 U.S.C. § 523(a)(6); *see also Ball* v. *A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir.
2006) (reciting § 523 dischargeability standard).  The Supreme Court has
clarified that the "willful" event must have been "a deliberate or intentional
*injury,* not merely a deliberate or intentional *act* that leads to injury."  *Geiger,*
523 U.S. at 61.  Intent is found when "the actor desires to cause consequences
of his act, or that he believes that the consequences are substantially certain to
result from it."  RESTATEMENT (SECOND) OF TORTS (1964) § 8A.

As this Court found in its 2014 Opinion, there is a long-standing Circuit
split regarding the "substantial certainty" test, and whether it ought be judged
subjectively or objectively.  *Margulies IV*, 517 B.R. at 452.  That split persists.
*Compare Matter of Scarbrough*, 836 F.3d 447, 453-54 (5th Cir. 2016) ("The

willful and malicious injury that occurred here is evidenced by both [i] an objective substantial certainty of harm and [ii] a subjective motive to cause harm."), *with In re Ormsby,* 591 F.3d 1199, 1206 (9th Cir. 2010) (requiring creditor to show that "debtor believes that injury is substantially certain to result from his own conduct"), *and In re Kane*, 755 F.3d 1285, 1293 (11th Cir. 2014) ("Our sister circuits have disagreed about whether the term 'substantial certainty' is a subjective standard, requiring a creditor to prove that a debtor actually knew that the act was substantially certain to injure the creditor, or an objective standard, requiring a creditor to show only that a debtor's act was in fact substantially certain to cause injury.  This Court has never had occasion to parse that distinction, and we need not do so today." (internal citation omitted)).  The Second Circuit has not taken a stance on the question, but "[c]ourts in the Second Circuit generally apply a subjective standard of intent," as this Court directed the Bankruptcy Court to do.  *In re Powell*, No. 16-30073, 2017 WL 665955, at *3 (Bankr. N.D.N.Y. Feb. 17, 2017) (citing *Margulies IV,* 517 B.R. at 453); *accord, e.g.*, *In re Orly*, No. 15-11650 (JLG), 2016 WL 4376947, at *5 (Bankr. S.D.N.Y. Aug. 10, 2016); *In re Ferrandina*, 533 B.R. 11, 26 & n.16 (Bankr. E.D.N.Y. 2015) (collecting cases).

### b.    Applicable Law Regarding Malice

To preclude discharge, a debtor-caused injury must also be malicious, meaning "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will."  *Ball,* 451 F.3d at 69 (quoting *In re Stelluti,* 94 F.3d 84, 87 (2d Cir. 1996)).

Absent a showing of actual malice, malice may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *Stelluti*, 94 F.3d at 88 (alteration in original, internal quotation marks omitted) (quoting *In re Stanley*, 66 F.3d 664, 668 (4th Cir. 1995)).  "Malice is implied when 'anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.'"  *In re Townsend*, 550 B.R. 220, 227 (Bankr. E.D.N.Y. 2016) (quoting *Citibank, N.A.* v. *Friedenberg (In re Friedenberg)*, 12 B.R. 901, 905 (Bankr. S.D.N.Y. July 29, 1981)), *aff'd sub nom. Townsend* v. *Ganci*, No. 16 Civ. 2814 (JFB), 2017 WL 752203 (E.D.N.Y. Feb. 27, 2017). "Typically implied malice is found where the behavior is of a type that the court cannot justify on any level."  *In re Rosenfeld*, 543 B.R. 60, 76 (Bankr. S.D.N.Y. 2015) (citing *Bundy Am. Corp.* v. *Blankfort (In re Blankfort)*, 217 B.R. 138, 143-44 (Bankr. S.D.N.Y. 1998) (collecting cases)).  However, "[w]here the debtor is motivated by some potential profit or gain, ... malice will only be implied where there is additional, aggravating conduct on the part of the debtor to warrant an inference of actual malice."  *Id.* (citing *Novartis Corp.* v. *Luppino (In re Luppino)*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998)).

### c.    **Margulies's Conduct Was Willful and Malicious**

Here, the Bankruptcy Court determined that Margulies "reached the point where he was substantially certain that he would hit Hough and injure him, [and yet he] did not apply his brakes until *after* he struck Hough and knocked him down."  *Margulies V*, 541 B.R. at 163.  And it this single fact upon

which Margulies's and Hough's claims fall:  Because Margulies "was substantially certain that he would hit Hough and injure him," his conduct was willful.

Margulies and Hough argue different reasons why the Bankruptcy Court erred in making this finding.  Margulies contends that "the standard is not whether there was a substantial *risk* of injury … but, rather, whether Margulies was substantially certain that Hough would suffer the devastating *injuries* he claimed to have suffered." (Margulies Br. 19).  But that is not the law as articulated by the Supreme Court.  *See Geiger,* 523 U.S. at 61 (holding that the term "willful" requires "a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury").

Hough, by contrast, argues that "[r]ather than addressing the situation as a whole," as the law requires, "the Bankruptcy Court artificially broke down the incident into constituent parts and attempted to define Margulies's 'successive states of consciousness' … in the fractions-of-seconds leading up to the injury." (Hough Br. 10).  This, Hough contends, (i) "flies in the face" of New York law directing courts to consider the transaction as a whole and (ii) "improperly conflate[s] recklessness with intentional misconduct." (*Id.* at 10-13).

This Court disagrees.  The Bankruptcy Court broke down the incident to demonstrate how it viewed the evolution of Margulies's intent, and did so in keeping with the Restatement's contemplated stages of intent.  *Margulies V*, 541 B.R. at 162-63.  Indeed, this deconstruction demonstrates how very

22

carefully the Bankruptcy Court accounted for the transaction as a whole.  (*See* USAA Br. 12-13).  Ultimately, the Bankruptcy Court found "there came a point when [Margulies's] lack of an intent to injure Hough gave way to a substantial certainty that he would."  *Margulies V*, 541 B.R. at 163.  Rather than conflating "recklessness with intentional misconduct," this finding applies the precise legal standard this Court commended to the Bankruptcy Court's consideration.

The Bankruptcy Court went on to find that because Margulies's conduct was willful, and Margulies admitted in his state-court plea that he was aware of the risk to Hough and that his conduct grossly deviated from the standard of conduct of a reasonable person, Margulies's conduct was impliedly malicious. *Margulies V*, 541 B.R. at 163-66.  The Bankruptcy Court reasoned that "[i]t is unacceptable to drive a car at a pedestrian to clear him from your intended path," a proposition with which this Court cannot disagree.  *Id.* at 164.

The Bankruptcy Court dismissed the possibility of mitigation by means of some economic motive.  Assuming *arguendo* that Margulies had such a motive, the Bankruptcy Court explained, "*no* economic benefit ... would justify driving into Hough in order to get to an important business meeting."  *Id.* at 166 (emphasis added).  Margulies's conduct was of the "type that [a] court cannot justify on any level."  *In re Rosenfeld*, 543 B.R. at 76.  Therefore, even if Margulies's initial decision to drive toward Hough had not been malicious, but rather had been motivated by a desperate economic need to get to his meeting, his subsequent choice not to brake when Hough failed to move out of his way was additional, aggravating conduct that justified an inference of malice.  *See*

*id.* Again, this Court cannot disagree.  Accordingly, the Bankruptcy Court's

Judgment that Margulies's debt is not dischargeable is affirmed.

### 2. The Bankruptcy Court's Judgment Dismissing Hough's Indemnification Claim Is Affirmed

#### a. Applicable Law Regarding Intent

As of August 3, 2000, Margulies was the named insured under a

$300,000 automobile liability policy and a $1,000,000 Personal Umbrella

Policy.  *Margulies V*, 541 B.R. at 166.  The Policies provided coverage for

"occurrences" not excluded by the Policies; occurrences were defined as

"accidents," but the term "accidents" was left undefined.  *Id.*

As this Court noted in its 2014 Opinion, courts in this Circuit have

explained that the identification of an accident turns on intentionality and

foreseeability:  "The distinction is drawn between damages which flow directly

and immediately from an intended act, thereby precluding coverage, and

damages which accidently arise out of a chain of unintended though expected

or foreseeable events that occurred after an intentional act."  *Margulies IV*, 517

B.R. at 457 (quoting *Brooklyn Law Sch.* v. *Aetna Cas. & Sur. Co.*, 849 F.2d 788,

789 (2d Cir. 1988) (collecting cases)).  "To deny coverage, then, the fact finder

must find that the insured intended to cause damage."  *Id.*

#### b. Applicable Law Regarding Fortuity

New York Insurance Law § 1101(a)(1) defines an "insurance contract" as

"any agreement ... whereby one party, the 'insurer,' is obligated to confer

benefit of pecuniary value upon another party, the 'insured,' ... dependent

upon the happening of a fortuitous event."  A "fortuitous event" is defined to

include "any occurrence or failure to occur which is, or is assumed by the parties to be, to a substantial extent beyond the control of either party." *Id.* § 1101(a)(2); *accord Consol. Edison Co. of N.Y., Inc.* v. *Allstate Ins. Co.*, 98 N.Y.2d 208, 220 (2002). Generally, "[a] loss is fortuitous unless it results from an inherent defect, ordinary wear and tear, or intentional misconduct of the insured." *Int'l Multifoods Corp.* v. *Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (quoting *Ingersoll Milling Mach. Co.* v. *M/V Bodena*, 829 F.2d 293, 307 (2d Cir. 1987)). To this end, the Second Circuit has instructed that "the determination whether a suffered loss ... was fortuitous and, therefore, covered by the policy must be made from the perspective of the insureds." *Highland Capital Mgmt., L.P.* v. *Glob. Aerospace Underwriting Managers Ltd.*, 488 F. App'x 473, 475 (2d Cir. 2012) (summary order); *Jewish Cmty. Ctr. of Staten Island* v. *Trumbull Ins. Co.*, 957 F. Supp. 2d 215, 233-35 (E.D.N.Y. 2013) (surveying New York decisions interpreting "accident or occurrence," and holding that whether an incident was "unexpected, unusual and unforeseen" should be judged from the point of view of the insured).

### c.   Margulies's Conduct Was Intentional and Not Fortuitous

Again, the lynchpin of the Bankruptcy Court's analysis in this regard is its finding that Margulies "was substantially certain" that he would hit and injure Hough. The Court reasoned that Margulies's substantial certainty meant that "hitting and injuring Hough was not unforeseen or unexpected from Margulies's point of view," and thus was not an 'accident.'" *Margulies V*, 541 B.R. at 168. Rather, "Hough's injury flowed directly and immediately from

25

Margulies's actions." *Id.* at 169.  The Bankruptcy Court found Margulies's conduct intentional on two bases:  First, it was intentional because it was both willful and malicious.  *Id.* at 167.  Second, it was intentional inherently.  *Id.* at 168.  The Court reasoned that the instant case fell within the "a narrow class of cases in which the intentional act exclusion applies regardless of the insured's subjective intent."  *Id.* (quoting *Rafferty*, 793 N.Y.S.2d at 619 (internal quotation marks omitted)).

This Court agrees.  Once Margulies "was substantially certain" that he would hit and injure Hough, and chose not to apply his brakes, the subsequent damages to Hough flowed "directly and immediately from [Margulies's] intended act."  *Margulies V*, 541 B.R. at 169.  As had the driver in *Rafferty*, Margulies "intentionally drove his car ahead knowing that there was a person in close proximity who would be hit if he did not stop the car."  *Id.*  "[T]o do the act [was] necessarily to do the harm which [was] its consequence; and ... since unquestionably the act [was] intended, so also [was] the harm."  *Id.* at 168 (quoting *Rafferty*, 793 N.Y.S.2d at 619-20).

With regard to fortuity, the Bankruptcy Court similarly found that there could be no fortuity in the face of Margulies's "substantial certainty."  "Margulies was intent on proceeding, and did so even after Hough backed into the path of the car."  *Margulies V*, 541 B.R. at 169.  Hough's injury flowed directly and immediately from this action.  *Id.*  Moreover, the "incident was not 'to a substantial extent beyond the control of either party.'"  *Id.*  Margulies was

26

in control of his car, had the capacity to use his brakes, and chose not to do so. The situation was well within his capacity to avoid.

Once more, this Court agrees. Hough again argues that the Bankruptcy Court's analysis was flawed because it was fragmentary; the Bankruptcy Court failed to consider the interaction as a whole. (Hough Br. 10). Hough would have this Court find different facts: that "at the moment when Margulies became 'substantially certain' of contact, the chain of events leading to injury was already in motion, and [Margulies] did not have total control to avoid Hough." (*Id.* at 14). But the Bankruptcy Court found the opposite, and its findings were not plainly erroneous. The Bankruptcy Court found Margulies continued to roll forward even after Hough could no longer escape and did not apply the brakes until after he hit Hough," *Margulies V*, 541 B.R. at 163, and that Margulies "intentionally drove his car ahead knowing that there was a person in close proximity who would be hit if he did not stop the car," *id.* at 169. Implicit in these findings is the Bankruptcy Court's determination that Margulies *could* have applied his brakes and simply chose not to. The Bankruptcy Court considered the incident as a whole, and determined it was neither unintentional nor fortuitous. This Court concludes the same, and affirms the Bankruptcy Court's Judgment dismissing Hough's claim for indemnification.[6]

---

[6]     Hough has also argued that USAA is barred from contesting coverage on the basis of *res judicata*. The Bankruptcy Court correctly found, as a preliminary matter, that this Court had rejected Hough's *res judicata* argument in its first opinion, such that determination of the issue was outside this Court's mandate on remand. *Margulies V*, 541 B.R. at 170; *see also Kuhl* v. *United States*, No. 07 Civ. 3680 (JS), 2008 WL 4527744, at *4-5 (E.D.N.Y. Sept. 30, 2008) (explaining that bankruptcy court may only

Before concluding, the Court pauses to note its dissatisfaction with this resolution. Indeed, much of this litigation is lamentable. After USAA breached its duty to defend Margulies in the original state court action, a default judgment was entered against Margulies, the magnitude of which subsequently bankrupted him. Perhaps if Hough had not made in the first instance allegations concerning the incident that were later deemed incredible by the Bankruptcy Court, the judgment entered would not have been so large, and Margulies could have paid it. Perhaps the same if USAA had not breached its duty to defend Margulies. Or if Margulies's son had not been so ill, or if Margulies had been able to explain his circumstances to the state court and obtain an adjournment of the proceedings. And of course, had Margulies only braked his car, or had Hough not chosen to back into the lane, *all* of this would have been avoided. Unfortunately for all, none of this was avoided. Instead, the facts and the law are what the Bankruptcy Court found them to be. The Bankruptcy Court's judgment is affirmed.

---

hear on remand arguments within the scope of the appellate court's mandate). The Bankruptcy Court also held, however, that "to the extent" its consideration of Hough's *res judicata* argument was "appropriate," the argument was rejected on the merits for the reasons this Court outlined. This Court holds the same: To the extent Hough's *res judicata* survived this Court's first opinion, it fails here for the reasons previously stated. "Even if USAA had assumed the defense of the underlying negligence action, it could not have defended Margulies's negligent conduct by arguing that he actually intended to injure Hough." *Margulies V*, 541 B.R. at 172. Hough has not satisfied *res judicata*'s third requirement.

**CONCLUSION**

For the reasons set forth in this Opinion, the November 16, 2015 judgment of the Bankruptcy Court is AFFIRMED and Margulies's and Hough's appeals are DENIED.  The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:      March 20, 2017
             New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge